**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CLN Properties, Inc., et al., | ) No. CV 09-1428 PHX DGC |
| Plaintiffs, | ) |
| v. | ) **ORDER** |
| Republic Services, Inc., and Allied Waste Industries, Inc., | ) |
| Defendants. | ) |

On August 31, 2009, Plaintiffs filed their first amended class action complaint against Defendants. Dkt. #21. Defendants have filed a Rule 12(b)(6) motion to dismiss. Dkt. #24. The motion is fully briefed.[1] For reasons that follow, the Court will grant Defendants' motion as to Count Five and deny it as to the remaining counts.[2]

**I.    Background.**

CLN Properties, Inc. and Maevers Management Company, Inc. brought the present putative class action against Defendants Republic Services, Inc. and Allied Waste Industries,

---

[1] Memoranda filed by both parties fail to comply with the font requirements of LRCiv 7.1(b)(1). Pleadings filed in the future should comply fully with this rule.

[2] The requests for oral argument are denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Inc. Dkt. #21 at 2.[3] Defendants merged into a single company in 2008 and are now collectively known as Republic Services, Inc. (hereinafter referred to as "Defendant"). *Id.*

Defendant is a publicly traded waste disposal company. *Id.* Plaintiffs are companies that have contracts for Defendant to provide waste disposal services. *Id.* at 5; *see* Dkt. #21-1 at 2-5. The contract between CLN and Defendant, which is attached to Plaintiffs' amended complaint as Exhibit A, is illegible. *See* Dkt. #21-1 at 3. Defendant asserts, without contradiction, that the contract permits Defendant to raise rates if certain specified costs increase and for any other reasons so long as CLN consents verbally, in writing, or through a course of conduct: "'[Defendant] may only increase rates for reasons other than those set forth above with the consent of the Customer. Such consent may be evidenced verbally, in writing or by the actions and practices of the parties.'" Dkt. #24 at 3 (quoting Dkt. #21, Ex. A).

Maevers's contract with Defendant includes the following provision:

> CHANGE IN PRICING: Because recycling, labor, disposal, and fuel costs constitute a significant portion of the cost of [Defendant's] services provided hereunder, Customer agrees that [Defendant] may increase Customer's rates hereunder to allot increases in such costs. Customer agrees that [Defendant] may also increase the rates from time to time to adjust for increases in the Consumer Price Index and increases in taxes, fees or other governmental charges assessed against or passed through [Defendant] (other than income or real property taxes). [Defendant] may increase rates for reasons other than those set forth above with the consent of the Customer. Customer's acceptance or consent to any increase or additional charges may be evidenced verbally, in writing, or by the actions and practices of the parties.

Dkt. #21-1 at 5.

Plaintiffs allege that Defendant began charging two cost recovery fees in 2005, "one ostensibly to recover the company's rising fuel costs" and the other "ostensibly to recover the company's rising environmental costs." Dkt. #21 at 2. Plaintiffs further allege that Defendant issued notices announcing that it was imposing the fees and stating that the fees would be guided by fluctuations in its actual costs – that if its "cost of fuel increase[d] or

---

[3] Citations to pages in the parties' filings will be to the page numbers applied by the Court's electronic docket at the top of each page.

decrease[d]," it would "adjust the Fuel Recovery Fee accordingly." *Id.* at 6; *see* Dkt. #21-1 at 9-10, 12, 14-16, 18-20, 22-24. Plaintiffs do not allege that they read or relied on these notices before paying bills that included the two fees.

Plaintiffs contend that Defendant's statements in the notices were "falsely and deceptively made," and that the fees were set at "levels that did not correspond" to the changes in its fuel or environmental costs. Dkt. #21 at 2. Plaintiffs assert that: "(a) the fees have not been tethered to actual changes in the company's fuel and environmental costs, but deceptively obtained increases in charges that were intended to and that did go to defendant's profit line; (b) the fees have been inconsistent with the expectations of the plaintiff contracting parties; (c) the fees have been unconscionable as they did not fall within the reasonable expectations of the plaintiff contracting parties, who were the weaker and adhering parties to the arrangements, as the existing agreements contained penalty provisions for refusal to accept the terms and carry on business with defendant; and (d) regardless, because the contract purports to give defendants the unilateral authority to increase the fees at will and without additional consideration to the plaintiff parties, the purported contract is illusory and without effect." *Id.* at 3.

Plaintiffs assert claims for injunctive relief (Count One), restitution (Count Two), breach of express contract (Count Three), breach of the implied covenant of good faith and fair dealing (Count Four), deceptive practices (Count Five), and unjust enrichment. *Id.* at 20-25. Plaintiffs seek to certify two classes, a "contract class" which presumably would assert Counts One through Four and the unjust enrichment claim, and a "UDAP class" which would assert Count Five. *Id.* at 17.

**II.    Legal Standard.**

When analyzing a complaint under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*,

534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

**III. Choice of Law.**

    **A. Is Choice of Law Necessary?**

Plaintiffs appear to concede that their deceptive practices claims must be governed by the law of each Plaintiff's home state (Dkt. #21 at 16; Dkt. #29 at 22), but the parties disagree on the state law that will govern the contract-related claims. Defendant contends that the contract law of each Plaintiff's home state must be applied to that Plaintiff's claim. Plaintiffs, who are located in Georgia and Missouri, argue that Arizona law should apply.

Plaintiffs first assert that no choice of law is necessary because the law of all states concerned – indeed, the law of all 39 states where contract-class plaintiffs will be located – is the same as Arizona law. Plaintiffs attach several charts purporting to summarize the law of these 39 states. Dkt. #29 at 10; Dkt. #29-1 at 1-20. In support of this argument, Plaintiffs cite only an unreported decision of the Arizona Court of Appeals. *Jahnke v. Federal Ins. Co.*, No. CA-CV 06-0795, 2008 WL 4093573, *3 n.9 (Ariz. App. April 15, 2008). That case in turn cites *Lucero v. Valdez*, 884 P.2d 199, 207 (Ariz. App. 1994) for the proposition that Arizona courts "only perform a choice of law analysis when there is a true difference in the law of two jurisdictions with an interest in the dispute." But *Lucero* was applying California choice of law principles, not Arizona principles. Plaintiffs cite no reported Arizona authority to support their contention that Arizona law requires no choice of law inquiry here.

More importantly, Plaintiffs have not shown that the laws of Georgia, Missouri, and Arizona are the same in all relevant respects. Plaintiffs submit charts that set forth four unremarkable principles of law: (1) that a contract based on misrepresentation is not valid, (2) that modifications to a contract require a meeting of the minds, (3) that the law implies

a duty of good faith and fair dealing in contracts, and (4) that illusory contracts are unenforceable. Dkt. #29-1 at 1-20. The charts then cite one case from each state in support of each proposition (with some of the cases being more than 40 years old), followed by a one-sentence parenthetical quote from each case.

Citation of a single case for an unremarkable principle of contract law does not come close to showing that the laws of Georgia, Missouri, and Arizona are the same on all contract and contract-related issues that might arise from Plaintiffs' claims. The discussion below, which is only deep enough to address the facial pleadings of the amended complaint, already has identified differences in the laws of these states. The more detailed inquiry required for summary judgment or motions in limine would likely reveal additional differences. Plaintiffs' single-citation charts for simple principles of law do not obviate the need for choice of law in this case.[4]

**B.      Choice of Law Analysis.**

"In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003). Arizona has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *See Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988); *Garcia v. General Motors Corp.*, 990 P.2d 1069, 1075-76 (Ariz. App. 1999). The law of the state with the most significant relationship to an issue governs. *Id*. Relevant factors include "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of

---

[4] Plaintiffs' charts purport to address the contract laws of 39 different states, but this order need consider only three. No class has been certified, and the only parties at this stage of the litigation are located in Missouri, Georgia, and Arizona. The Court notes, however, that the insufficiency of the charts with respect to these three states are magnified many times when applied to 39 states.

the parties." *Aries v. Palmer Johnson, Inc.*, 735 P.2d 1373, 1381 (Ariz. App. 1987) (quoting Restatement (Second) of Conflict of Laws § 188(2)).

In this case, Georgia and Missouri represent the locations where Plaintiffs' contracts with Defendant were created, negotiated, and to be performed. The subject matter of the contracts – the waste to be hauled – was also there. CLN is a New York corporation that does business in Georgia, as does Defendant. Maevers is a Missouri corporation that does business in Missouri, as does Defendant. Neither CLN nor Maevers does business in Arizona. Clearly, the states with the most significant relationships to the contracts are Georgia and Missouri.

Plaintiffs argue that Arizona law should apply because Arizona is Defendant's headquarters and the place "the deceptive communications were directed from." Dkt. #29 at 11. Plaintiffs cite cases from Ohio and Texas, applying their choice of law rules, in support of their arguments. *Id.*; *see In re Commercial Money Center, Inc., Equipment Lease Litigation*, 627 F. Supp. 2d 786 (N.D. Ohio 2009); *In re Great Southern Life Insurance Co. Sales Practice Litigation*, 129 F.R.D. 212, 218 (N.D. Tex. 2000). In Arizona, however, the location of the alleged wrongful decision, although perhaps relevant, is not one of the primary factors considered under Restatement (Second) of Conflicts § 188.

Plaintiffs also look to Restatement (Second) of Conflicts § 6 in support of their argument. This section notes that statutes often determine how broadly a state's law is to be applied. In the absence of such a statute, the section explains that courts should consider the needs of the interstate system, the policies of the forum, the policies of other interested states, the protection of justified expectations, the policies underlying the field of law, uniformity of result, and ease in the determination and application of the law to be applied. *See Aries*, 735 P.2d at 1381 (quoting Restatement (Second) of Conflicts § 6). The comments to section 6 suggest that it is intended to look at factors affecting the intended interstate reach of a particular state's laws. The Comment to subsection (2), which Plaintiffs ask the Court to apply, explains: "Legislatures usually legislate, and courts usually adjudicate, only with the local situation in mind. They rarely give thought to the extent to which the laws they enact,

1 and the common law rules they enunciate, should apply to out-of-state facts. When there are
2 no adequate directives in the statute or in the case law, the court will take account of the
3 factors listed in this Subsection in determining the state whose local law will be applied to
4 determine the issue at hand." Restatement (Second) of Conflicts § 6, cmt. C.

In this case, the interstate system has worked well for more than 200 years with each state being free to develop and enforce its own contract laws. Plaintiffs have cited no policy of Arizona suggesting that its contract laws are intended to be applied to contracts created and performed in other states, nor has it cited authority to suggest that the interests of Georgia and Missouri are any less important than those of Arizona in this case. All three states would seem to have an equal interest in enforcing the justified expectations of their citizens, and Plaintiffs have identified no policies underlying contract law that would suggest Arizona should trump the laws of other states. The Court concludes, therefore, that the most significant relationship analysis set forth above provides the clearest basis for decision. The contract laws of Georgia and Missouri will be applied to Plaintiffs' contract-related claims.

**IV.     Motion to Dismiss.**

The Court must determine whether CLN and Maevers have stated a claim for each Count.

   **A.     Count Three: Breach of Contract.**

Plaintiffs allege in their first amended complaint that "Defendant's conduct constitutes repeated breaches of contract." Dkt. #21 at 22. Under Missouri law, in order to state a claim for breach of contract, "a plaintiff must allege (1) the existence of a contract or agreement and the terms of that agreement; (2) that plaintiff performed or tendered performance; (3) that defendant did not perform; and (4) that defendant's failure to perform caused plaintiff damage." *Venable v. Hickerson, Phelps, Kirtley & Assocs., Inc.*, 903 S.W.2d 659, 664 (Mo. Ct. App. 1995). Under Georgia law, the elements for a breach of contract claim are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008).

Maevers has alleged facts sufficient to show the existence of a contract (Dkt. #21 at 5), that it tendered performance by paying for the waste disposal services (*Id.* at 4), that Defendant did not perform its obligations under the contract because it raised prices in a manner not consistent with the contract (*Id.* at 5-15), and that Defendant's failure to perform its obligations caused damage in the form of excess fees (*Id.* at 4). *See Venable*, 903 S.W.2d at 664. These facts are sufficient to "state a claim to relief that is plausible on its face." *Clemens*, 534 F.3d at 1022 (quoting *Twombly*, 550 U.S. at 570). Similarly, CLN has alleged facts showing a breach by Defendant (Dkt. #21 at 5-15), resultant damages (*Id.* at 4), and that it has the right to complain about the breach (*Id.* at 4-5). *See Kuritzky*, 669 S.E.2d at 181.

On this claim and the remaining contract-related claims, Defendant essentially seeks summary judgment. Defendant asks the Court to render judgment in its favor on the basis of the facts pled in the amended complaint, as characterized by Defendant. The Court may eventually be able to enter summary judgment for one side or the other, but cannot make that determination in the absence of a more complete exploration of relevant facts.

Defendant asserts that Plaintiffs "do not point to any provision in the service agreements that required the fees it imposed to 'correspond' to fluctuations in 'actual' fuel and environmental costs." Dkt. #24 at 6. At the motion to dismiss phase of litigation, however, a plaintiff must only state a claim that is plausible on its face. *Clemens*, 534 F.3d at 1022. Plaintiffs have met that burden as shown above. The proper construction of the contracts and the parties' course of dealing with respect to the contracts are factual matters that must be addressed on a more complete record at summary judgment or trial.[5]

Defendant argues that Plaintiffs have failed to allege breach because Plaintiffs consented to the increased charges through their conduct. Dkt. #24 at 7. The contracts themselves, however, state that consent may arise from the "actions and practices of the parties." Dkt. #24 at 3 (quoting Dkt. #21, Ex. A); Dkt. #21-1 at 5. The Court cannot decide

---

[5] The primary case relied on by Defendant, *Horizon Security v. BFI Waste Systems*, 2003 WL 22872097 (E.D. La., Dec. 1, 2003), was decided on summary judgment.

at this pleading stage whether the "actions and practices of the parties" gave rise to consent within the meaning of the contracts. More factual development will be required before that question can be answered.

Defendant asserts that Plaintiffs have failed to state a claim because the voluntary payment doctrine precludes reimbursement. Dkt. #24 at 16. In Georgia, "[p]ayments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered . . . ." *Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc.*, 606 S.E.2d 10, 12 (Ga. Ct. App. 2005) (internal citation omitted). In Missouri, "[w]here money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying – which is to say, under a mistake of law." *Am. Motorists Ins. Co. v. Shrock*, 447 S.W.2d 809, 812 (Mo. Ct. App. 1969). In this case, Plaintiffs allege that their payments were not made with the full knowledge of the facts required to protest the charges at the time of payment and that, as a result, the voluntary payment doctrine does not apply. Dkt. #29 at 20. This factual issue cannot be resolved at the pleading stage.

### B. Count Four: Breach of Good Faith and Fair Dealing.

Plaintiffs allege that Defendant breached its duty of good faith and fair dealing by, among other things, calculating the cost recovery fees in ways that did not reflect changes in its actual costs, by disguising that fact through manipulations, and by unilaterally changing the recovery percentages and adjusting the cost of fuel benchmarks. Dkt. #21 at 22-23. Defendant argues that CLN has no claim for breach of the implied covenant of good faith and fair dealing because, under Georgia law, the "implied covenant modifies and becomes a part of the provisions of the contract" and "cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." *Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries*, 662 S.E.2d 745, 748 (Ga. Ct. App. 2008). If a plaintiff proves that a defendant breached a contract provision,

- 9 -

however, even one that is only implied, that plaintiff can also have an independent cause of action for breach of the implied covenant of good faith and fair dealing. *See id.* at 749-50 (holding that a trial court can allow a jury to consider breach of the implied covenant when the jury is also considering a breach of contract claim). As noted above, the Court concludes that CLN has stated a claim for breach of contract.

As to both CLN and Maevers, Defendant asserts that it did not breach its duty because Defendant only exercised a right it had under the contracts. *See Tommy McBride Realty, Inc. v. Nicholson*, 648 S.E.2d 468, 470 (Ga. Ct. App. 2007) (It is "well settled that a party does not breach its obligation of good faith where it exercises a right that it has under the contract."); *Al-Khaldiya Elecs. & Elec. Equip. Co. v. Boeing Co.*, 571 F.3d 754, 758-59 (8th Cir. 2009) (There "is no breach of the implied covenant of good faith and fair dealing where the contract expressly permits the actions being challenged.") (citation omitted). It is true that the contracts appear to permit Defendant to change prices for any reason as long as Plaintiffs consent. *See* Dkt. #21-1 at 5. Whether Plaintiffs consented, however, is a question that requires more facts about the actions and practices of the parties. It cannot be decided at this stage.

### C. Count Five: Deceptive Practices.

Plaintiffs allege that Defendant engaged in deceptive trade practices under the consumer fraud statutes of 24 different states. Plaintiffs appear to concede that CLN cannot state a claim for deceptive practices because there is no such provision under Georgia law. Dkt. #24 at 15-16; Dkt. #29 at 22-23. Maevers alleges that it has stated a claim for relief under Missouri's Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.010, et seq.

The MMPA states that any "person who purchases or leases merchandise primarily for *personal, family or household purposes* and thereby suffers an ascertainable loss . . . as a result of the use . . . by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action." Mo. Rev. Stat. § 407.025 (emphasis added). Courts applying this statute have held that "the MMPA is a consumer protection statute. Because Plaintiffs are not consumers that purchased or leased a product for personal,

family or household purposes from Defendants, they cannot state a claim under the MMPA." *Hunters Friend Resort, Inc. v. Branson Tourism Center, LLC.*, No. 09-3114-CCV-S-ODS, 2009 WL 2450281 at *3 (W.D. Mo. 2009 Aug. 10, 2009). Maevers, of course, contracted with Defendant for commercial waste disposal, not for personal, family or household purposes. Maevers therefore cannot state a claim under the MMPA.[6]

Because Maevers cannot assert a claim under the MMPA and CLN has no deceptive practices claim under Georgia law, Count Five will be dismissed.

### D. Count One: Injunctive Relief.

Plaintiffs ask the Court to enjoin Defendant from charging the cost recovery fees because they are unconscionable, imposition of the fees is unenforceable, and Defendant is obligated to reduce the fees. Dkt. #21 at 20-21. Defendant asserts that Plaintiffs have failed to state a claim because the facts, as alleged, do not support a finding of unconscionability under Missouri law or Georgia law.

Under Missouri law, a party seeking to prove that a contract term is unconscionable must show procedural and substantive unconscionability. *Pleasants v. Am. Express Co.*, 541 F.3d 853, 857 (8th Cir. 2008). Procedural unconscionability "focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentations among other unfair issues in the contract formation process," *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. 2006), while substantive unconscionability focuses on whether a "man in his senses and not under delusion" would propose or accept the terms, *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. Ct. App. 2003). Whether the facts of this case support either kind of unconscionability cannot be determined on the basis of the bare pleadings. A fact-specific inquiry into the nature of the parties' dealings, how the contract was created, and how it was performed will

---

[6] Maevers argues that it is a "person" under the MMPA. *See* Mo. Rev. Stat. § 407.010(5) (stating that a person can include any "business entity or association"). Even if this is true, Maevers did not purchase waste disposal services for personal, family or household purposes. Moreover, Plaintiffs admit that its argument is contrary to *Hunters Friend* and cites no Missouri case law adopting its MMPA construction. Dkt. #29 at 23.

- 11 -

be required.

Under Georgia law, the unconscionability analysis focuses on "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice," and on the "commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Mullis v. Speight Seed Farms, Inc.*, 505 S.E.2d 818, 820 (Ga. Ct. App. 1998). This too is a fact-specific inquiry not possible on the present record.

### E. Count Two: Restitution.

Plaintiffs assert that Defendant wrongfully obtained money through illusory contracts, and requests the Court to restore that money to them. Dkt. #21 at 21. Defendant asserts that Plaintiffs have failed to state a claim for restitution because they cannot show that the contracts (or the amendments to the price terms of the contracts) are illusory. Dkt. #24 at 14. Defendant further asserts that restitution is not the appropriate remedy because restitution is used to put a party "in as good a position as he would have been if no contract had been made and restore[] to plaintiff the value of what he parted with," *Patel v. Pate*, 128 S.W.3d 873, 878 (Mo. Ct. App. 2004) (internal citation omitted), and Plaintiffs have not alleged that they made any such expenditures. Dkt. #24 at 15.

Whether the contracts are illusory and whether Plaintiffs overpaid, entitling them to restitution, will require an inquiry into how the contracts were negotiated, performed, and, possibly, modified through the parties' course of dealing. This fact-specific determination cannot be made on the current pleadings.

### F. Unjust Enrichment.

Under Missouri and Georgia law, an action for unjust enrichment is only available when there is no contractual relationship. *See Al-Khaldiya Elecs.*, 571 F.3d at 759 (stating that under Missouri law, "[e]xpress terms of an unambiguous agreement preclude quantum meruit and unjust enrichment claims"); *Parks v. Thompson Builders, Inc.*, 675 S.E.2d 583,

585 (Ga. Ct. App. 2009) ("Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract . . . ."). Because there was a contract, Defendant seeks dismissal of the unjust enrichment claim.

Plaintiffs, however, may plead in the alternative. Fed. R. Civ. P. 8(a)(3); *see Childress Painting and Assocs., Inc. v. John Q. Hammons Hotels Two, L.P.*, 106 S.W.3d 558, 561-62 (Mo. Ct. App. 2003) (allowing a plaintiff to seek recovery on the distinct, alternative theories of breach of contract and unjust enrichment); *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 573 (N.D. Ga. 2007) ("Unjust enrichment claims are merely an alternative to breach of contract claims.") (citation omitted).[7]

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Dkt. #24) is **granted** with respect to Count Five and **denied** with respect to the remaining counts.
2. The Court will set a Rule 16 conference by separate order.

DATED this 13th day of January, 2010.

_____
David G. Campbell
United States District Judge

---

[7] Defendant also argues that the voluntary payment doctrine should preclude the unjust enrichment claim. As discussed above, however, whether the voluntary payment doctrine applies is a factual question that cannot be answered at this stage.

- 13 -